(No. 11758.—Reversed in part and remanded.)

THE PEOPLE *ex rel.* Henry Stuckart, County Collector, Appellee, *vs.* NATHAN KLEE, Appellant.

*Opinion filed February 20, 1918.*

1. TAXES—*what taxes are to be included in minimum rate for Cook county.* In making a reduction of Cook county taxes the taxes for roads and bridges, for parents' pension fund and for loss and cost of collection of the general fund must all be included in the minimum rate of forty-five cents, but the tax for bonds and judgments and interest, and for actual loss and cost of collection of the same, is not to be included in said limit.

2. SAME—*what taxes are subject to reduction.* The county road and bridge taxes are subject to reduction but the tax for parents' pensions is not so subject.

3. SAME—*fees of jurors and witnesses should be levied in separate items.* The county tax for fees of jurors and witnesses should be levied in separate items, as such expenses are as clearly distinct and severable as are judges' salaries and the fees of jurors.

4. SAME—*expense of feeding jurors should be a separate item.* The expense of feeding jurors is a distinct charge from that of the service of jurors and becomes a charge only when necessary on the trial of a criminal case, and a levy for such a purpose should therefore be in a separate item.

5. SAME—*when a levy for up-keep of county buildings is sufficiently specific.* A county tax levy for "furniture, apparatus and machinery for the several buildings, departments and institutions of the county," specifying the buildings, departments and institutions and the amounts for each, is sufficiently definite for the benefit of the tax-payers.

6. SAME—*a county levy for "betterment" of buildings is too indefinite.* A county tax levy for "betterment" of buildings, included under the heading "For building purposes and expenses of betterment of buildings," is too indefinite, and if the erection of buildings is contemplated and included in the levies for other purposes the levies should be separate and amount for each purpose specified.

7. SAME—*when loss and cost of collection cannot be added to minimum rates for educational and city purposes.* No additional amount for loss and cost of collection can be added to the minimum rate allowed for educational purposes nor to the minimum for general city purposes where such minimum is the highest rate that can be levied for such purposes after the scaling process is completed.

8. SAME—*park commissioners should certify flat-rate levies for park taxes levied under acts of 1885, 1893 and 1895.* Park commissioners should certify a flat-rate levy for park taxes levied under the acts of 1885, 1893 and 1895, as the words "amount" and "sum," as used in those acts, are not used in a manner to indicate that the amount in dollars is required to be certified.

APPEAL from the County Court of Cook county; the Hon. JOHN H. WILLIAMS, Judge, presiding.

WILLIAM M. LAWTON, and ELMER M. LIESSMANN, (HOWARD F. BISHOP, of counsel,) for appellant.

MACLAY HOYNE, State's Attorney, (SAMUEL A. ETTELSON, Corporation Counsel, IRWIN N. WALKER, ORVILLE R. SEITER, EDMUND D. ADCOCK, ROSS C. HALL, WALTER E. BEEBE, LEON HORNSTEIN, and ROBERT E. GENTZEL, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellant prosecutes this appeal from a judgment of the county court of the county of Cook for various taxes of 1916 against his lots in the city of Chicago, to which taxes he had filed objections.

Two of the objections to the county tax of said county are that it was incorrectly scaled when extended and the rate made too high by adding ten per cent to the levies for the bonds and judgments and interest thereon for loss and cost of collection, and by adding $325,000 for loss and cost of collection of all other county taxes.

The total taxes levied upon the taxable property of the county of Cook for county purposes are the following:

For principal and interest on bonds................$1,514,162.50
For judgments and interest........................ 244,334.98
For general purposes sufficient to produce.......... 5,172,962.50
For loss and cost collecting last sum............... 325,000.00

    Total for county purposes...................$7,256,459.98

The county clerk added ten per cent to the amounts levied for bonds and judgments and interest, making the amounts levied for those purposes and for loss and cost of collection, respectively, $1,665,578.75 and $268,768.47. There was included in said levy for general purposes for parents' or mothers' pension fund the sum of $185,000, for roads and bridges $100,000, and for State aid roads $108,-994, making a total of $208,994 for road and bridge fund. The total equalized assessed valuation of the taxable property in said county is $1,115,025,441. After the tax levy had been filed with the county clerk, and after he had figured and made his tax scale sheets, he was enjoined from extending a certain portion of the county tax levy amounting to $311,430, but on the advice of counsel he only deducted from the levy, by reason of the injunction, the sum of $296,317.23. The county clerk then proceeded to make his new scale sheets and rates by separating the remainder of the general purpose fund into three funds, to-wit:

Parents' pension fund ............................. $185,000.00
Road and bridge fund.............................. 208,994.00
General purpose fund ............................. 4,482,651.27
    Total ..................................... $4,876,645.27

The balance of the county tax he included in the following separate funds, to-wit:

For bonds and int. and 10% for loss and cost........ $1,665,578.75
For judgments and int. and 10% loss and cost....... 268,768.47
For loss and cost collecting other county taxes....... 325,000.00

He then proceeded to find the several final rates for said funds, with the following result:

General purposes ...................... .4021 ⎫
Road and bridge ...................... .0188 ⎪
Parents' pension ...................... .0167 ⎬ .6404, or .65
Bonds and int., loss and cost............ .1494 ⎪
Judgments and int., loss and cost......... .0242 ⎪
All other loss and cost.................... .0292 ⎭

The total of said rates being a fraction over .64, the total rate for county purposes was extended at .65, as above indicated. The exact rates that are required to raise the

amounts named in said several funds,—*i. e.,* the number of cents per $100 of the equalized valuation,—may be found by first reducing each one of the several amounts to cents by the addition thereto of two ciphers and then dividing the several amounts by the figures representing in dollars the equalized valuation of the taxable property of said county, 1,115,025,441, and the correct results will be found to be a fraction over the rates set forth in the following table:

| | |
|---|---|
| For general purposes | .4020 |
| For roads and bridges | .0187 |
| Parents' pension | .0165 |
| Bonds and int., loss and cost | .1493 |
| Judgments and int. loss and cost | .0241 |
| All other loss and cost | .0291 |

The county clerk in every instance added one point to the correct rate above given for the additional fraction not carried out in said last tabulation, under the usual custom ordinarily allowable in the extension of tax rates. Appellant's contention that the clerk did not correctly calculate the several rates is apparently sustained only as to one rate, his rate for parents' pension, which is only one point too large in his scale sheet made after said injunction was issued. In his first tabulation of rates made before the injunction issued, the rate for parents' pension fund is correctly given as .0166, after adding one point for the fraction over .0165. His first tabulation gives the rate for general purposes as .4286 instead of .4021, which calculation is correct, as it was based upon the amount levied for general purposes after first deducting the amount of the parents' pension fund and the road and bridge fund.

The county court reduced the amount extended by the clerk for loss and cost of collection of the bonds and judgments and interest to five per cent and overruled all other of appellant's objections. The court properly reduced the amount for loss and cost of collection of the bonds and judgments and interest under the evidence, as this court has already held in the case of *People* v. *Sandberg Co. (ante,*

p. 245.) The court, however, erred in holding that the tax for parents' pension could not be included in the aggregate of taxes certified for extension in the process of scaling the taxes under the so-called Juul law and in holding that the rate for the collection of the $325,000 for loss and cost of collection of the tax for general county purposes should not be considered in the scaling process in fixing the minimum rate of forty-five cents allowed in counties having a popu-. lation of more than 300,000, as also held by this court in *People* v. *Sandberg Co. supra.* Owing to the fact that the taxes certified for extension in other parts of the county exceeded three per cent of the assessed valuation, it was necessary, under the Juul law, to reduce the county taxes in the manner required by section 2 of that act. (Hurd's Stat. 1916, chap. 120, par. 343*b*, p. 2229.) In making that reduction in the county tax the levy for roads and bridges, for parents' pension and for loss and cost of collection of the general fund must all be included in the minimum rate of forty-five cents below which the county tax in a county having the population of Cook county may not be reduced. The tax for bonds and judgments and interest, and the actual cost shown by the evidence for loss and cost of collection of the same, are not to be included in the limit of forty-five cents. The correct rate to be extended for bonds and interest and five per cent for loss and cost will be found to be .1426, and for judgments and interest and five per cent for loss and cost, .0230. The correct rate for parents' pension fund is .0166, as it is not subject to reduction, but it must be a part of the forty-five cent limit. The road and bridge taxes are subject to reduction under the Juul law. *People* v. *Illinois Central Railroad Co.* 256 Ill. 332.

The further objection of appellant that the clerk, in making his reduction from the amount levied for general purposes, did not deduct the full amount enjoined, $311,430, cannot be sustained, for the reason that there is no evidence in the record to sustain the same. The order of the court

in the injunction case does not appear in the record, and there are no other facts in the record from which we may determine whether the full amount enjoined and for which the levy was to be reduced is the amount contended for by appellant or by appellee.

In the county levy the sum of $350,000 was levied "For expenses of dieting jurors and fees of jurors and witnesses." The court erred in not sustaining appellant's objection to this item of the levy, as the levy is for several or separate purposes and is in violation of section 121 of the Revenue act. Fees of jurors and fees of witnesses are as clearly distinct and severable as are judges' salaries and fees of jurors. Dieting or the feeding of jurors is a very distinct charge from that of the service of jurors, and becomes a charge against a county only under circumstances when a trial court is required, under the law, to keep the jury together in the trial of a criminal case and in the custody of an officer, and a levy for such a purpose should be in a separate item, so that a tax-payer may not only know the amount levied for that item but be put in a position so he may contest it for excessiveness. *People* v. *Toledo, St. Louis and Western Railroad Co.* 231 Ill. 498; *People* v. *Cairo, Vincennes and Chicago Railway Co.* 243 id. 217; *People* v. *Cairo, Vincennes and Chicago Railway Co.* 266 id. 557.

Appellant made a similar objection to the levy of $91,-500 for "Furniture and repair fund." As this levy was further made definite by distinct and several levies "For the expenses of providing furniture, apparatus and machinery for the several buildings, departments and institutions of the county," which several buildings, departments and institutions were specified as county building, criminal court building, county jail, etc., and an amount named in the levy for each one of them, all the items aggregating said sum being made definite and certain, the objectionable feature was removed from the levy. The general head, "Furniture and repair fund," would not have been sufficiently definite

and would apparently have included several items in one item. We think there are no such objectionable features to a levy for "furniture, apparatus and machinery," as these designations are of similar items all coming properly under the general head of furnishings. The location of these separate items in distinct buildings or institutions and the specifications of the exact amount for each building and institution accomplish all objects for the tax-payer for which said section was enacted.

The further objection of appellant that the tax levies "For building purposes and expenses of betterment of buildings, as follows: County building,—betterments, $102,000; Oak Forest institutions,—betterments, $3000," should also have been sustained by the court. The heading of these two items clearly indicates by the words "building purposes" that a part of these items is levied for erecting buildings and that the other part is for betterments of buildings, whatever that may mean as used by the county authorities. If erecting buildings is contemplated, the amount to be expended is ascertainable and the building and its use may be readily stated. Therefore the tax-payer is entitled to such information. (*People* v. *Cairo, Vincennes and Chicago Railway Co.* 266 Ill. 557.) The word "betterments" is too indefinite. It is a term that includes all character of improvements on real estate by which the property is enhanced in value, and it has been held that such a term includes any addition or alteration made to a building or expense incurred for draining or paving, whether temporary or permanent, and any expense for engines, boilers, furnaces for heating, elevators, gas engines, asphalt pavement and opening and widening streets adjacent to the property. (1 Words and Phrases, 765.) Said item ought to have been made more certain and definite, and if the erection of buildings was contemplated and included with levies for other purposes the levies should have been separated and the amounts for each purpose specified.

The same objections were made by appellant to the items of said levy made under the general heads or designations, "Expenses of State's attorney not otherwise provided for," and "Grundy county fund." The former of these two levies was made very particular and definite by the separation of that levy into several distinct parts and levying a specific amount for each part. The levy for the Grundy county fund was made as definite and distinct as it could be made in the following language: "For payment of costs, fees and other necessary charges, claims and expenses of the county of Grundy resulting from change of venue from the criminal court of Cook county to the circuit court of Grundy county in the case of The People of the State of Illinois *vs*. Charles B. Munday, and incident to the trial of said case in said county of Grundy or required in executing any and all orders of the court made in said case, which have been paid by the county of Grundy or for which it is or may become liable, $10,856.30." Cook county is liable to the county of Grundy and is required to pay all of the expenses, etc., enumerated in said levy item by the express provisions of section 33 of chapter 146 of our statutes.

Appellant's contention that the tax levy for salaries and wages of the State's attorney and his assistants is invalid because there is no authority for such a levy cannot be sustained. Said levy is authorized by the State's Attorneys Salary act, as amended and approved June 27, 1913. The constitutionality of that act was sustained by this court in *Hoyne* v. *Ling*, 264 Ill. 506, against the objections raised to it in that case, which are the same, in substance, as those raised to its validity by appellant in this case.

As the road and bridge taxes and the $325,000 taxes levied for loss and cost are subject to the scaling process under the Juul law and when scaled are a part of the minimum rate of forty-five cents on the $100, and as parents' pension is also a part of that minimum but not subject to reduction, the rates for county taxes enforcible against the

property of appellant and all other objectors filing the same valid objections as did appellant and who are parties to the stipulations in this record relative to appeals by objectors, are the following:

For judgments and int. and 5% loss and cost............ .0230
For bonds and int. and 5% loss and cost................ .1426
For parents' pension .................................. .0166
For general purposes and all other loss and cost.......... .3926
    Total ............................................ .5748

The last item for general purposes includes road and bridge taxes and all other taxes for general purposes except the levies "For expenses of dieting jurors and fees of jurors and witnesses, $350,000," and "For building purposes and expenses of benefits of betterments of buildings, as follows: County building,—betterments, $102,000; Oak Forest institutions,—betterments, $3000." The rate required to raise $455,000 (the sum of the last named items) is .0408, which rate added to the rate for parents' pension fund and the rate of .3926 for general purposes makes the forty-five cents allowable to appellee for parents' pension fund and general purposes if the levies for general purposes had all been properly made.

After the scaling process under the Juul law the highest rate in this case that the city could levy for educational purposes is the minimum rate of $1.20. The highest rate that it could levy for general corporate purposes for the city of Chicago is the minimum rate of $1.10. No additional amount could be added to either of said amounts for loss and cost of collection.

Both of appellee's objections that the court improperly eliminated the items of loss and cost of collection from the school taxes and the taxes for general corporate purposes of the city were properly overruled by the court. The other objections of appellant that the city taxes are too high as extended when the loss and cost item is eliminated have already been considered by this court in *People* v. *Sand-*

*berg Co. supra,* and for the reasons in that case given are overruled.

All of appellant's contentions and objections relating to the taxes of the Sanitary District of Chicago, including the validity of the validating act of May 3, 1917, (Laws of 1917, p. 394,) and the court's rulings on the evidence offered by appellant, have been fully considered and passed upon by this court in the case of *People* v. *Sandberg Co. supra.* For the reasons in that case given, appellant's said objections and contentions are held to be untenable.

Appellant objected to three of the five flat-rate taxes levied by the West Chicago Park Commissioners for locating, establishing, enclosing, improving or maintaining public parks, boulevards, driveways, highways or other public works or improvements. The first of said five levies was a half mill tax levied under the act of February 6, 1869. The second was a tax of one and one-half mills on the dollar levied under the act of May 2, 1873, "in addition to the amount of money now authorized to be raised by any such board." The second section of the latter act further provides that said commissioners shall certify "the rate or percentage of such taxes by them levied for the purposes herein provided." Appellant concedes that both of the foregoing levies under said statutes are properly levied by flat-rate levies and makes no objection to the legality of the same. The third levy aforesaid is a flat-rate levy of one mill on the dollar levied under the act of June 26, 1885, providing that said commissioners shall, "in ·addition to the amount of money now authorized to be raised by taxation on the property embraced in its park district, be allowed a sum not exceeding one mill on each dollar of taxable property. * * * And the officers, authorized by law to assess taxes for park purposes respectively, shall, on receiving a certificate from such * * * commissioners that the amount mentioned in such certificate, not exceeding the amount aforesaid, is necessary, * * * assess the same

282 – 29

upon the taxable property, * * * the same as other park
taxes are by law assessed." The fourth levy aforesaid is
a levy of one and two-tenths mills levied under the act of
June 17, 1893, as finally amended June 14, 1909, providing
that said commissioners shall, "in addition to the amount
of money now authorized to be raised by any such board,
* * * be annually allowed a sum not exceeding one and
two-tenths mills on the dollar of the taxable property, * * *
and such additional one and two-tenths mills on the dollar
* * * shall be used and expended by such board; * * *
and the county clerk * * * shall, on receiving a certifi-
cate from such board * * * that the amount mentioned
in such certificate, not exceeding the amount aforesaid, is
necessary, * * * spread and assess such amount upon the
taxable property embraced in such park district, the same
as other park taxes are by law spread and assessed." The
fifth levy aforesaid is a flat-rate levy of two mills on the
dollar levied under the act of June 17, 1895, providing that
such commissioners shall, "in addition to the amount of
money now authorized to be raised by any such board,
* * * be annually allowed a sum not exceeding two mills
on the dollar of the taxable property, * * * and such
additional two mills * * * shall be used and expended
by such board; * * * and the county clerk * * * shall,
on receiving a certificate from such board * * * that
the amount mentioned in such certificate, not exceeding the
amount aforesaid, is necessary., * * * spread and assess
such amount upon the taxable property embraced in such
park district the same as other park taxes are by law spread
and assessed, and the same shall be collected." The last four
acts may be found in Hurd's Statutes of 1916, chap. 105,
pages 1843, 1852, 1862 and 1873, respectively. A careful
examination of the wording of all of the last four statutes
indicates clearly that the park commissioners are in every
case to certify a flat-rate levy. It is conceded by appellant

that that is true as to the first and second rates above levied. In the last three sections aforesaid the words "amount" and "sum" are not used in a manner to indicate that the amount in dollars is required to be certified by the commissioners. The words "amount" and "sum," as used in those sections, simply indicate that the amount or portion of the statutory rate that is required by the commissioners, not exceeding the rate mentioned in said several sections of the statutes, is to be certified. Another reason for our conclusion is that in the last three of said statutes it is expressly provided that the levies therein mentioned shall be spread and assessed "the same as other park taxes are by law spread and assessed." Park taxes were then assessed by the flat-rate method under the said first two acts.

It is finally contended by the appellant that the county clerk's rate of seventy cents for the total of the West Park taxes is excessive by one cent, even conceding that all of the flat rates are legal. Appellee figured the bonds and interest rate at .2538 and appellant figured the same tax rate at .2318. The burden of showing error is upon appellant. Appellant only gives the result of his calculation in figures. The evidence is so very meager that we cannot get the basis upon which appellee made his calculations, and the record evidence furnishes no correct basis or facts upon which we can make the calculation ourselves. We are convinced from the evidence that both appellee and appellant are competent to make the calculations, but we are unwilling to hazard a guess as to who has erred in this calculation.

The judgment is affirmed except as to the taxes of the county of Cook, and as to those taxes it is reversed and the cause is remanded. *Reversed in part and remanded.*